Yes, thank you, Your Honor. If I may, I would like to reserve three minutes for referral. I didn't hear how much time... There's a little bit of background noise that I'm having trouble with. Okay, I'll try to speak louder. I was saying... Yeah, speak louder and I think we can get through it, but there's a little bit of background noise that... Yeah, I hear it too. I know it's not on my end. Mr. Garg, could you mute there? Okay, that took care of it. Thank you. Thank you. So, good morning again. Juan Monteverde with Monteverde & Associates. I would like to reserve three minutes. Okay, I'll keep you on the clock. Thank you. Well, plaintiff prevailed last time we were here and we obtained a favorable ruling clarifying the liability standard to be negligence for 14 claims in this circuit. And now we're back on a different issue. And the issue now is we are asking the court to reverse dismissal because plaintiff pled that the recommendation statement contained plausibly misleading statements based on evidence that we have in this record. And the issue is a slide that was included in a banker book and that's on the record ER 124. The full banker book was attached to the complaint and that's docket 29-1. Now, defendants are asking the court to interpret facts, but erroneously and putting it aside, this was a motion to dismiss. Basic, the board likes to get fairness opinions from bankers and bankers to do that, they perform search and analysis. Three are significant. One is a fiscal analysis that looks at the peers. The other one is a comparable companies analysis that looks at your peers at the current time. And another is a precedent transaction analysis or premium state analysis that looks at prior deals and see how your deal compares to. Here, Goldman Sachs, who got paid $11 million to render a fairness opinion, performed all three analysis. The 14-9 only discloses two of those analysis. Now, defendants mean. Let me just I want to make sure I understand your your your claim is based on leaving out the chart that compared premiums obtained by other companies in the field, correct? Yes, because that's the that's that's the only omission that you claim made the statement misleading. 100 percent correct. OK, and that chart was appended to your complaint, correct? It's actually E.R. one to four. We put it in the text. We got and pasted it in the right. Yeah, it was it it was in it. So so the district court could. Because it was before it, look at that chart and determine whether as a matter of law it was material or misleading to leave it out, correct? That's where we disagree, because we know it. It certainly is. You certainly put it before the court. It didn't go outside the record. It was looking at the face of the complaint. That is correct. OK, so my first question is a strange one. What relief do you seek in this case? Money damages. We believe the transaction was the manner in which you obtain approval was misleading. That's so how are your money damages? Would how would they be measured? Would they be measured by a hypothetical merger that nobody has ever offered to this corporation? You've got a 25 percent premium on your stock. Your client did anyway. So what would the money damages be and how would they be proved? And I ask this because the question is whether we should imply a private cause of action. And in this case, where the merger has already occurred, you're not seeking simply to rescind your your tender. You're seeking damages. How how in the world would we measure? It's very simple. And in Chantry Court of Delaware, where a lot of merger litigation happens, it's an appraisal. I have to first show that there was a violation here. The violation is an exchange. So I assume your violation. I think you're going to I want to assume that for purpose of my question. Assume the violation. How how would how would we measure the damages that your client suffered? Evaluation. You would submit to the court an expert report of what we think the company was worth. And here we would use the premium state analysis to show that on the mean and median average premium, you had nine dollars, 16 cents and nine dollars, 54 cents, for example. OK, so now let me turn to materiality now. Yes. I've read the I've read the Goldman Sachs report. You don't claim. That the report is the Goldman Sachs report is inaccurate. No, we claim. So it says you've got a company here that's performing below the average for the industry. And apparently you got a tender offer that was close to average, a little below. So why would it be material to know that companies that perform better got better, got better offers? Well, I think it would be material to be able to compare your premium to the rest of the market. It might be it might be very interesting. But why would a reasonable investor not go through with this deal? If the information submitted showed that you had a below average performing company and you got a slightly below average offer? All right. And that's what I that's what I read the Goldman Sachs report to say. Yeah. And the problem is that that was the TSC industries dealt with that substantial premium at 460. And the Supreme Court said we have to reverse summary judgment because what premium should have been paid and how you calculate it. It's not something we do. That should be left to the trier of fact. That's all we're asking here. And I know I have a difficult case. I'm not saying it's a slam dunk. I'm saying in a motion to dismiss. I have cases showing premium spent analysis matter. I have TSC industries. I have Glassman from Chantry Corp. And I also have Virginia. Let me rephrase my let me rephrase my question a little bit. Let's assume that the Goldman Sachs report said this is the worst performing company in this industry we've ever seen. But it's premium offer was not the worst we've ever seen. With the failure to disclose that information have been material. I think so, because the board in the board reviewed that information, which here they did. It's on the record ER 56. Those analysis need to be provided to the shareholders and let them make the decision. That's the whole point of 14A and 14E to disclose information. And TSC says there's going to be doubt as to the importance of something that's going to be commonplace. But you should err on giving it, not withholding it. And I with all the respect, I don't agree that because they got 26 percent premium, that's good enough. That's not how it works. And by the way, the facts here, I also disagree that they were not performing well. But those are all factual issues with which are not to be determined today at a motion to dismiss. That's what happened here. All three. But here's here's here's again. I want to come back to this. But here's my problem. You say had the entire Goldman Sachs report been disclosed, you wouldn't have a problem, right? But that's fair. Well, the entire report. Let's assume that they attached it. Every entire report, the entire report says you have a poor performing company. And so and you don't challenge the accuracy of that. Indeed, that part, that part. So I'm trying to figure out whether or not it's just automatically material because this is interesting information, or whether it's material because a reasonable investor might have made a different decision had he known that information. What's the test? Well, the test is, is, is whether the information would be important for shareholder. And I know the test is, can you, as a matter of law, say it's immaterial, meaning it's so obviously unimportant that no one would care for it. And when I bring cases that show that this was important, I don't think you can defend or dismiss the case at a motion to dismiss. And here I disagree. The company was performing poorly. I disagree. And the premiums and this is important because I was even looking last night at a 10K from the company from 2014. They talk about their competitor, LSI Avago, which is also a semiconductor. So we disagree with the penance allegation. They're not in the semiconductor business. That's another factual issue. But putting that aside, that premium in that transaction, which was on the chart, ER 124, was 46.9%. That's their competitor. They got 26%. Shareholders don't know about it. And you're telling shareholders, approve this deal. We're getting a premium of 26%. But we're not telling you what we know the board, what the average premium was. Let shareholders decide for themselves. And by the way, the only analysis that cuts against the deal, and that's COJA, right, that helps us here, was the premium spend analysis. The other analysis, discounted cash flow, and the comparable company, showed this was a good deal. I agree with your honor there, but that's not how you decide what to cut. The information showing this was a bad deal, that's information that, in my opinion, is most important, that was not disclosed here. So let me, can I ask, I don't want to preempt my colleagues, but let me ask you the ultimate question in this case. Is there a private cause of action? Yes. Under 14E? And it makes sense, right, because 14E... I know you say yes, but tell me why. We've never recognized one, have we? You have. Plain versus McCabe, and even Bargebedian. Both cases from the... For negligence? For negligence? No. Plain versus McCabe, there was no negligence. That was just determined what cause of action. Again, in Bargebedian, this score did not create a new cause of action. It just clarified the standard of liability, which is common sense that with compulsory speech you hold someone to a lower level of liability than on intentional speech, speech that you're not required to make. Can I ask you the question differently? Has any court that you know of expressly recognized a private cause of action for negligence under 14E? Well, not under 14E. Besides this score, you mean. Besides Bargebedian. Because in Bargebedian, the court obviously recognized it implicitly. No, you're implying it. You're saying we must have recognized it there. I'm asking a very specific question. Has any court, to your knowledge, ever expressly said there is an implied private cause of action under 14E for negligence? Both Plain versus McCabe and Smallwood, but not for negligence. For negligence, that's what Bargebedian did. So the answer is no. The answer is no. But I would argue that, with all due respect, this court is bound by precedent. Plain versus McCabe said there's a private cause of action, and Embank would be the only way to reverse that. And defendants asked for Embank review, and it was denied that request. I also would say, in this case, defendants themselves argued to the court two years ago they don't need 14B4. That was one of my earlier cause of action, which was governed by negligence, because they already have a private cause of action under 14E. So they can benefit from having used that as a sword and now used it as a shield. They are not happy, the defendants, that the court found that 14E would be governed by negligence. But I would submit that, under Aronson versus Aronson, and Aronson versus Aronson, you can have different levels of possibility. And that's what we have here now. We didn't create a new cause of action. We just clarified it. And when we were in the Supreme Court, I think Justice Kavanaugh said the court won't undo years of precedent, including its own, in Shriver. In Shriver, the Supreme Court clarified the elements of a 14E claim. Again, why would you clarify the elements of a 14E claim if there's no private cause of action? Well, I guess I thought that was the issue that the court granted cert on. No. And finally decided to dismiss. What was the issue in front of the Supreme Court, in your view, then? The circuit split. My case created a circuit split. Five other circuits say 14E is governed by scienter. The Bargevedian decision was the first decision, after 50 years of jurisprudence, to find that it should be negligent. Wasn't there an extensive discussion with Justice Kavanaugh, though, about whether there was an implied cause of action here? Yes. And that's my point, that even Justice Kavanaugh, I think, made comments that the Supreme Court is not going to undo years, decades of precedent. And again, if defendants want to challenge that issue on a new case, that's fine. But here, they already admitted, conceded, early on, that we had a private cause of action under 14E. Now they want to undo that. Let me interrupt for just a minute. Is that a judicial estoppel argument, meaning right or wrong? They're stuck with it? Yes, 100%. I'm not sure I want to go to the Supreme Court on a judicial estoppel theory that they made some argument that turns out to be a kind of a weak argument because the premise is wrong. And then ask the Supreme Court to affirm a decision that there's a private cause of action for this day and terrain only. That's a pretty hard case to go up on. Yeah, I think this case has three problems. Judicial estoppel, precedent for the Ninth Circuit on Plain v. McCabe. I understand that that was not determined a standard of liability, but it was determined that there was a private cause of action. And three defendants. I'm sorry. Oh, that this should only be reviewed in bank. I apologize. Okay. Now, you sought to reserve three minutes. You're down to about 45 seconds. Let's hear from the other side, but we'll make sure you get a chance to respond. Thank you very much. We're now going to hear, I'm not sure in which order, from the lawyers representing Emilex and Mr. Edwards. When you're ready. Somebody needs to unmute. I defer to Mr. Garr. This is Mr. Landau. Okay, so Mr. Garr goes first. Okay. Mr. Garr, you're still not, you're still muted. Mr. Garr, you're muted. There we are. My apologies, Your Honor, and thank you, Your Honors, and may it please the court. Our position is that there is no implied private right of action at all for negligence under Section 14E of the Exchange Act. No court has ever recognized such an implied right of action. Not this court, which has only recognized it in the context of a cause of action for intentional wrongdoing under Section 14E, nor any other court, and we would urge the court to reach that issue and decide the case on that basis. Is it true that in an earlier iteration in this same case, you argued that the private cause of action under 14E was a reason not to find a private cause of action elsewhere? Is it true that you made that argument? Yes, Your Honor, we did acknowledge the existence of the implied private right under this court's precedence, which had always been limited to or involving a case for scienter, and on the basis of that, we said that there was no basis to imply a private right for negligence under Section D4 of the Exchange Act, Section 14E, which involves rulemaking provisions. We never acknowledged the existence of an implied private right for negligence under Section 14E, and our argument today is perfectly consistent with the one we made with respect to D4, which is there's no basis for taking the leap and inferring an implied right of action for negligence. Now, this court confronted a similar situation, as did courts across the country, with respect to Section 17A of the securities laws. There, courts had always assumed that it was only good for scienter. Once the Supreme Court held that the cause of action extended to negligence, courts across the country, including the Ninth Circuit, held that you could no longer imply a private right for negligence under that provision. Indeed, this court said that implying a right of action for negligence under Section A would be fraught with danger, and we have the same problems here, and fundamentally the problems, Your Honor, is that an implied right of action for negligence runs headlong into statutory provisions, like the express procedural restrictions on negligence actions that Congress created in Section 11 of the securities laws. When Congress creates a negligence action, it adds added procedural restrictions to restrain that that are absent when a court implies a private right of action for negligence. So we accept today the court's prior panel decision that 17A on its face extends to negligence. We don't challenge that today, but the implied right of action that the court had previously recognized for scienter, an intentional wrongdoing under 14E, cannot be extended to claims for negligence. And again, the court has never considered that issue before. It is squarely raised before you today. It was presented to the Supreme Court. They declined to resolve it, perhaps because they wished to get the views of this court on it. We raised it before the district court. The district court said it was not the right court to address it. But there's no impediment to the court reaching that issue today, and it really is the threshold question before this court, because if there's no implied private right of action for negligence, then there's really no reason for this court to be opining on whether or not the particular allegations here state a claim for negligence. Okay. I have one question that may or may not be directly relevant legally, but I have a problem understanding how it can be negligent when you've got highly paid professionals performing a task that requires professional skill and attention, and they don't include a table. Is negligence that somehow it slipped off the table and they forgot about it? I mean, it begs belief that that wasn't intentional. Sure, Your Honor. They pay Goldman Sachs $11 million to do something, and they say, oh, my gosh, we forgot to include that table. I would want my money back. I think, Your Honor, this gets to the pleading question, and I'm happy to address it. And on that, I think that the first and most important point I would make is that this court and other courts, the Supreme Court, have made clear that there's no prohibition in Section 14E on omissions, no matter how material. No, I understand this. So the question is whether or not they've identified in a statement that is affirmatively misleading. Mr. Garkin, before you go on, I just want to make sure I understand the history of this case correctly. Does this case arrive to us now in the posture that this can only be a negligence claim? Yes, I believe it does. We can't interpret this complaint as making a claim that involves Sienta because of the prior history of this case. I believe that's correct, Your Honor. Like Judge Fletcher, it's sort of hard for me to believe that it was just left out negligently, but that's sort of the way this case is served up to us, right? That's correct. And again, to prove Sienta, they would have to prove the added requirements under the PSLRA. But I think the fundamental problem is that they haven't pleaded a statement that is misleading. And with respect to the premium statement that we discussed earlier, I think there are four reasons why that is so. Number one, that statement simply refers to the existence of a 26.4% premium as one of 12 reasons to support a merger. The recommendation statement didn't make any comparison to any other premiums, didn't state that that premium was high or above average. And, of course, by definition, half of all premiums are below average. Number two, as the district court explained, the 26.4% premium, while below average, was nevertheless within the normal range of transactions reflected on the semiconductor transaction chart. I think you're actually confusing median and mean, but that's okay. They're similar, Your Honor. But I think that what Judge Cormier said was that the 26.4% was within the normal range. And I think that's true with respect to the mean or median. But it is not true that by definition half of the numbers are below average. You're absolutely correct, Your Honor. My apologies. That would apply only with respect to the mean. The third point I would make is Judge Hurwitz's point is that plaintiffs haven't challenged the statement that ultimately the $8 share price was fair, which is quite notable. How could the reference to the 26.4% premium as one of 12 reasons to support the merger be misleading if they themselves acknowledged that the $8 share price was fair? And then the fourth point I would make is that, again, as Judge Hurwitz acknowledged, that other material in the recommendation statement at page 61 of the ER disclosed that Emulex, while performing solidly, was nevertheless performing below average compared to the closest peer companies. And this was reflected in the selected companies analysis. So that's a perfect explanation as to why, even if they got a premium below average, that would have been a perfectly fair and appropriate reason to support the merger. Now, this court could have... Mr. Garrett, how do we measure materiality here? So let's assume that everything you're saying is correct, that as an investor, had I seen this chart, it wouldn't have changed my mind. Indeed, it might have reinforced my view that this was a fair merger. But it's really something that I would have liked to have seen before I made the decision. It's the kind of material a reasonable investor would expect to have received. What's the measure of materiality here? Sure. Well, first I would point you to footnote 8 of the Regal Pharmaceuticals decision, where the court said correctly that the question isn't whether a shareholder might find the information helpful or even material. It's whether or not they've made a misleading statement. And so I think you need to distinguish between whether the statement is misleading and whether the chart on its own somehow meets materiality standards. So I think the key question before this court is whether the statement is misleading. And what is the statement, in your view, that this case turns on? Well, there's two that they've pleaded, Your Honor. One, the statement that the 26.4% premium was one of 12 reasons to support the merger. And the second is the reference to summary in the recommendation statement, which I frankly find hard to understand in that by definition a summary doesn't include all information. And the recommendation statement here on pages 59 of the ER and 61 explicitly said that it did not include all of the financial analyses included by Goldman Sachs. But on the question of whether it's misleading, this court has said that the standard is whether or not the statement affirmatively creates an impression that differs in a material way than the state of affairs that actually existed. And the statement that a 26.4% premium in this case was a reason one of 12 to support the merger does not differ in any material way with the state of affairs that actually existed. There's no dispute about what was said. I want to come at this from a slightly different direction. I'm assuming, although I understand that what we have here in front of us is negligence, I'm assuming that someone made a decision not to put in this table in the summary or in the recommendation. Do we have any notion as to why they didn't do that? The only thing I can guess is that it would have required more than just the table because the table on its own suggests that the price is too low. Is it that they just didn't want to go through the extra explanation? What's going on here? Why was it left out? Sure, Your Honor. The bottom line is we don't know the answer to that, and I don't think it's relevant to whether the statement itself was misleading. But what I would say is a couple of things, Your Honor. Number one, it's settled, of course, that directors and companies have to make decisions all the time about what information is not disclosed, and not all information has to be disclosed. So that's point one. Point two is that here they may well have determined that the transactions in the semiconductor company chart were not particularly probative because those companies were not really at the heart of the peers of Emulex here, which were the companies listed in the selected companies analysis. But we don't know, Your Honor. And if that's true, it would have been very easy for them to, here's the table and here's why, in fact, it's justifiable that our number is below the average. Why didn't they say that? That's true, Your Honor, but the question, the legal question under Section 14E is whether what they said was in any way misleading. And I believe it was not as a matter of law for the four reasons that I gave. And again, I mean, I would point the Court to page 44 to 45 of the Matrix Initiatives case by the Supreme Court where the Court emphasized that it's not what was admitted. Companies control whether or not they violate the securities laws by what they say. And the question is whether or not what they have said is misleading. And here, nothing is misleading about stating that a 26.4% premium was a reason, one of 12, to support the merger here, particularly where that premium was well within the range of other premiums, even on that chart, and where plaintiffs themselves acknowledged that the ultimate share price that they received, $8, was fair, and where the recommendation statement disclosed that this was a company that, although performing solidly, was below average, which would align perfectly with the below average premium. Now, I'm happy to answer any other questions that the Court has. I see that my time is expiring, but we would urge you to affirm. Any other further questions from the bench for Mr. Garr? Okay, thank you, Mr. Garr. Thank you, Your Honor. And, Mr. Garr, if you can mute. We'll wait until you're muted before we go forward, because we're getting some background noise from your end. We need to mute, yes. I'm sorry, very sorry for the technological problems on our end, Your Honor. Tell your tech people to give you the button. Yes. Okay, now Mr. Garr is gone. I don't want to start until he's back. He may have a word with his tech people on various issues today. Okay, now you're back. Mr. Landau. May it please the Court. Eric Landau on behalf of the Emulex Directors. I want to address the heightened pleading standards at the PSLRA, but before I do, there was an initial set of questions by Judge Horowitz to Mr. Monteverdi, my learned opposing counsel, about his damages, and he talked about invoking appraisal damages. I want to remind the Court that he did not do so. The plaintiff did not seek an appraisal, nor did they attack the fairness of the merger. If so, then they would have been subject to what is known in Delaware as a Corwin analysis. So I do not believe the answer is I'm going to invoke my appraisal rights or ask this Court, or actually the District Court, to make such an appraisal. Your Honors, the Emulex Directors submit that the heightened pleading requirements... I ask the question because it seemed to me if the fairness weren't being attacked, then a possible remedy would be, of course, to rescind your tender. But his clients, I assume, don't want to do that. In fact, Your Honor, they expressly reversed course. To go over a little bit of the procedural history, the plaintiff first made this an equitable relief claim. They asked for an injunction. Then after we produced documents because they said they needed them for a preliminary injunction motion, instead of proceeding with the preliminary injunction motion, instead they amended their complaint and limited the complaint solely to damages. If that answers the Court's question, I want to say that the heightened pleading requirements of the PSLRA must apply to negligence claims under Section 14. And plaintiffs must allege a strong inference of negligence that is cogent and at least as compelling as any opposing inference one can draw from the facts alleged. Of course, that is the standard of review established by TELL Labs interpreting the PSLRA. Though TELL Labs addressed the state-of-mind requirement under Section 10b, the reasoning and the policy considerations behind the statute's heightened standards did apply in the evaluation of whether plaintiff has alleged a strong inference of negligence. And I will quote Justice Ginsburg, We're aware of that. You're over time. Is there one last thought or so you'd use to sum up? Yes, Your Honor, and I appreciate that. The abuses recognized by Congress and the Supreme Court and TELL Labs are no less prevalent, are no less important to curb than under Section 14e, than under 10b. And we urge the Court not only to affirm, but also to apply the PSLRA to Section 14e and require plaintiffs to plead or allege that strong inference of negligence. Okay, thank you. Thank you very much. Mr. Valdiverde, we took you over time. About the end of the time you sought to reserve, let's put three minutes on the clock. One thing I would say, and I think procedurally this matters, the economic loss or the damages argument was not before the Court. That was not brief. But I want to point out to the complaint, Paragraph 5 on the record, ER 92. We say the $8 per share merger consideration was inadequate as Emulex had experienced significant growth in the months leading to the tender offer and had consistently exceeded management's revenues and earnings expectations. The merger consideration also failed to adequately value Emulex's product portfolio and prospects for future growth. The bankers had three analyses. One of them showed this was not a good deal, and that analysis is not discreet. Mr. Valdiverde, that's why I asked you the question at the outset. As I read your pleadings, your claim is that leaving out this chart is what made the statements misleading. Yes. Right? If the chart had been included, you wouldn't have a cause of action here. Correct. So you're claiming that some statement became misleading because the chart was left out. You're not making a substantive claim that the merger was unfair because that's not a 14E claim, is it? Correct. I'm saying we have damages. I'm saying I believe at trial I'll be able to prove damages. So tell me why, using the standards the Supreme Court's given us, we would find a specific statement in the recommendation to be misleading because of the omission of the chart. What statement is misleading because of the omission of the chart? Two statements that Mr. Gersen and for me. One is that the summary of the Goldman Sachs is not complete. It's incomplete and it's misleading. And two, the touting of the premium. And at a motion to dismiss, you have to find that as a matter of law, the information we're challenging is immaterial and that it would be obviously unimportant or so obviously unimportant. As the Supreme Court put it, what state of affairs was inaccurately described in the recommendation? That the transaction is fair and that they're getting a 26% premium and they should be happy. It wasn't a good transaction because the premium didn't compare well with even the average. That's our point. And you didn't tell shareholders that. If you tell shareholders, look, we're below average on the premiums, but this is why. And I think Judge Fletcher was asking those questions. I would agree there may be no case. But we don't have that situation yet. And they've got to live with the consequences. They chose a common analysis that I see in every merger case, Your Honor. These proxies have 49 statements, always have it. And again, the law in this circuit at a motion to dismiss, it has to be immaterial as a matter of law. We have TSC Industries. We have Glassman. And we have Virginia Bank Shares. Costing premium, saying let the trial fact decide, or finding that's material. I think that suffices for this exercise. Thank you very much. Thank you to all sides, both sides, all lawyers, for their helpful arguments. The case of Butzow v. Amulek is now submitted for decision.
judges: W. Fletcher, Watford, Hurwitz